GEORGE B. MERRILL

*vs.*

INHABITANTS OF THE TOWN OF HARPSWELL

Cumberland.     Opinion March 11, 1921.

*The right to construct and maintain a bridge with a draw, suited to the purposes of*
*navigation, implies the right on the part of the municipal officers to employ*
*all the necessary and proper means for the execution of that pur-*
*pose, including plans and specifications for the con-*
*struction of the proposed bridge.*

This is an action of assumpsit in which the plaintiff seeks to recover of the town
of Harpswell, the sum of $1,287.96 for services performed in drawing plans
and specifications for the construction of a bridge from Bailey's Island to
Orr's Island, in the town of Harpswell.

The court found as a matter of law, that the selectmen of the town of Harps-
well were without authority in directing the plaintiff to prepare the plans
and specifications, which he did prepare and that, therefore, the town could
not be held for payment.

Judgment was rendered for the defendant to which exceptions were taken.

*Held:*

That the selectmen were authorized to employ the plaintiff for furnishing plans
and specifications for the construction of the proposed bridge.

On exceptions. This is an action of assumpsit to recover for
services rendered in preparing plans and specifications for the con-
struction of a proposed bridge between Orr's Island and Bailey's
Island in the town of Harpswell. Defendant claimed that the munici-
pal officers were not legally authorized to contract with the plaintiff
to furnish or render the services sued for and that the town was not
liable. The case was tried by the presiding Justice without the
intervention of a jury, subject to exceptions in matters of law, who
found for the defendant as a matter of law, and the plaintiff excepted.
Exceptions sustained.

Case stated in the opinion.

*E. H. Wilson,* for plaintiff.

*Emery G. Wilson,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, DEASY, JJ.

SPEAR, J. This case comes up on the following exceptions. This is an action of assumpsit, commenced November 15, 1919, entered at the January term, 1920, and tried by the Justice, without the intervention of a jury, at the May term, 1920, subject to exceptions in matters of law.

The Ad damnum is Two Thousand Dollars ($2000.00)

The plea is the general issue.

The Justice found as follows:

"It was enacted in Chapter 356 of the Private and Special Laws of 1883 that—

'Authority is hereby given to lay out, construct and maintain a bridge, with a draw, suited to the purposes of navigation, across and over the tide-waters separating Orr's Island from Bailey's Island in the Town of Harpswell.'

On February 23, 1912, the selectmen of Harpswell made return of the laying out of a way connecting the southerly extremity of an existing way on Orr's Island with the northerly extremity of an existing way on Bailey's Island. This return makes no mention of a bridge, a draw, or of any contemplated adaptation to the requirements of navigation.

At the annual town meeting of 1912 in Harpswell it was voted—

'To accept the road and way for a bridge as laid out by the Selectmen from Orr's Island to Bailey's Island.'

At a special town meeting in Harpswell, held on April 2, 1912, acting upon an article in the warrant of the following tenor—

'To see if the Town will vote to construct a bridge between Orr's and Bailey's Island on the way as laid out by the Selectmen, and accepted by the Town at the annual meeting March 4, 1912, determine kind and cost of same and manner in which the money will be provided to build the bridge'—. . . . it was voted . . . . .

'To accept proposition as per motion of C. S. Thomas read at the meeting, being the same as drawn up by Mr. Gulliver and as follows: VOTED that the Town proceed to construct a bridge with necessary approaches and abutments thereto, between Orr's Island and Bailey's Island on the town way as laid out by the Selectmen and accepted by the Town March 4th, 1912, and that the Selectmen be and they

hereby are authorized and directed to procure plans, specifications and estimates for the same, to advertise for bids and to enter into contract therefor in the name and in behalf of the town with authority to reject any or all bids; and the Selectmen are hereby constituted a committee with the power to build the bridge and its approaches as herein provided.'

The record of this vote contains further provisions relating to the method of financing the proposition, but which are immaterial to the determination of the matters in issue.

Subsequently, at the request of the selectmen of Harpswell, the plaintiff prepared and submitted plans and specifications for a bridge from Orr's Island to Bailey's Island, which plans and specifications were used by the selectmen in connection with the advertising for bids for construction, which bids were opened on December 13, 1913, in the presence of the entire Board of Selectmen and the plaintiff.

The case does not show that any building contract was ever made, or that any bridge has ever been constructed.

It is a well settled rule of law that whoever contracts with persons assuming to act in behalf of a municipality, does so at his peril and is bound to ascertain the authority of such persons to act for and bind the municipality which they assume to represent.

In the present case I hold, as a matter or law, that inasmuch as the contemplated bridge was to cross tide waters, authority for its construction must come from the Legislature, and that in exercising the authority granted, the town must follow strictly the legislative provisions conferring it.

In the case at bar, authority was granted to 'lay out, construct and maintain a bridge, with a draw, suited to the purposes of navigation,' but the first step taken in pursuance of the legislative authority, as the case shows, was the laying out of a 'way,' and, if it were to be granted that the laying out of a way should be held to be equivalent in law to the laying out of a bridge, it nowhere appears that such a bridge was laid out as was authorized by the Legislature, namely, 'A bridge, with a draw, suited to the purposes of navigation.' Indeed, the first appearance of this essential element in the proceedings is disclosed in the testimony of the plaintiff, who says that he provided for a draw in the plans which he drew.

I hold, therefore, as a matter or law, that the selectmen were acting without authority in directing the plaintiff to prepare the plans and

specifications which he undoubtedly did prepare, and that, therefore, the town cannot be held for payment.

I, therefore, find for the defendant.

To WHICH FINDING of law the plaintiff takes exceptions and prays that his exceptions may be allowed. The evidence in the case is made a part of the exceptions."

Upon an inspection of the finding of the Justice, his decision seems to be based upon the following conclusion, that "It nowhere appears that such a bridge was laid out as was authorized by the Legislature, namely, "a bridge with a draw, suited to the purposes of navigation."

We recognize the well settled rule of law invoked by the Justice as the basis of his decision, that whoever contracts with a municipality or with the selectmen or agents of a municipality, does so at his peril and is bound to ascertain the authority upon which such municipality, its selectmen or agent assume to act.

We further note with approval, his finding that in as much as the contemplated bridge was to cross tide waters, authority for its construction must come from the Legislature and that in exercising the authority granted, the town must follow strictly the legislative provisions conferring it. As we understand the theory of the finding, it was because the town did not follow strictly the legislative provisions, that it was without authority to bind the inhabitants of the town, in procuring a contract for the execution of the plans and specifications for the building of the bridge.

We are inclined to the opinion that the interpretation of the authority of the selectmen under the wording of the statute may be too narrow. The statute conferring authority upon the town to build the bridge may be divided into two parts, first, authority to lay out the bridge; second, authority to construct and maintain a bridge with a draw, suited to the purposes of navigation. Although the language employed was unfortunate, yet the meaning is clear when read in connection with the purpose of the act, as may be done under *Moore* v. *Maine Central R. R.*, 106 Maine, 297.

A way includes a bridge. R. S., Chap. 1, Sec. 6, Paragraph 6. Hence, to lay out a bridge, is to lay out the way for the location of the bridge. *Inhabitants of Wells* v. *County Commissioner*, 79 Maine, 522. From the evidence, it appears that the selectmen laid out a way connecting Orr's Island with Bailey's Island which, read in connection with the act of the Legislature, and the purpose for which the way

was laid out, must be construed to include the contemplated bridge over the tide water to connect these two land points. In fact, the laying out of the way for any other purpose than the building of a bridge would be nugatory, as legislation would be useless and unnecessary for any other purpose.

Furthermore, it is shown by the action of the town, that they understood this to be the purpose and acted upon it at the following March meeting, in voting "to accept the road and way for a bridge as laid out by the Selectmen from Orr's Island to Bailey's Island." The town required no act of the Legislature to enable them to locate the way over the land, hence, establishing a way across the water for the location of the bridge, was the first necessary step to be taken, in carrying into effect the provision of the statute for the construction of the bridge.

Accordingly, we are of the opinion that the language of the statute. "Authority is hereby given to lay out a bridge," contemplated merely the location of the way, over which the bridge was to be built and that, when the way was located, this clause of the statute was fulfilled and exhausted.

Having done this, then the next step in accomplishing the purpose of the statute was to proceed to construct a bridge with a draw, suited to the purposes of navigation.

Under the language of the statute, the right, "to construct a bridge with a draw," is subsequent and independent of laying out the way.

The town, however, in the plainest language is authorized to construct a bridge and draw with the limitation that "it must be suited to the purposes of navigation." This limitation, in view of the Federal Law, is a very important one and requires that the Federal Law shall be read into our statute, in order to give the limitation its legal effect.

The Federal Law retains complete supervision over navigable waters and all structures thereon, with the proviso, "That such structures may be built under authority of the Legislature of a State, across rivers and other water ways, the navigable portions of which lie wholly within limits of a single State, provided the locations and plans thereof, are submitted to, and approved by the Chief Engineer and by the Secretary of War, before construction is commenced" and provided further, "that when plans for any bridge or other structure have been approved, it shall not be lawful to deviate from such plans

without approval of the Chief of Engineers and the Secretary of War." United States Compiled Statutes, 1916, Annotated Vol. 10, Page 12,256, Section 9971.

In view of this Federal statute, it must be concluded that out State Legislature granted permission for the construction of the bridge in question, with a full knowledge of the Federal statute and in contemplation of its application, expressed in the limitation that it must "be suited to the purposes of navigation."

Accordingly, while the town was authorized to lay out a way and construct a bridge thereon, by authority of the State Legislature, yet such authority was limited by the proviso above referred to, and the proviso clearly requires, as a condition precedent to the building of a bridge or any other structure over tide waters, the presentation to, and approval of the location and plans, thereof, by the Chief of Engineers and the Secretary of War.

In other words, the State statute is permitted to authorize the construction of a bridge over tide waters within the State by a Federal statute, upon a proviso. Under the proviso, the State statute may permit such construction. The proviso then takes effect and requires the plans and specifications, provided in the Federal statute.

The right to construct and maintain a bridge with a draw, suited to the purposes of navigation, implies the authority on the part of the municipal officers to employ all the necessary and proper means for the execution of that right, hence to obtain plans and specifications.

Accordingly, in view of the interpretation of the State statute, permitting the building of structures over tide waters, in subordination to the Federal statute, we are of the opinion that it was not necessary for the selectmen, in laying out the way for the bridge in question, and preparing for the construction thereof, to specify that they laid out a way for a bridge, "with a draw, suited to the purposes of navigation," as such specification, in view of the Federal statute, would merely become surplusage.

Our conclusion, therefore, is that under Chapter 356 of the Private and Special Laws of 1883, the selectmen of Harpswell were authorized to employ the plaintiff for furnishing plans and specifications for the construction of the proposed bridge.

*Exceptions sustained.*